UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH GIGANTINO,

                Plaintiff,

    - against -

TURNER CONSTRUCTION COMPANY and
DELTA AIRLINES, INC.,

                Defendants.
----------------------------------------------------------X

<u>**MEMORANDUM AND ORDER**</u>
14-CV-3619 (RRM) (RER)

ROSLYNN R. MAUSKOPF, United States District Judge.

       Plaintiff Joseph Gigantino brings this action against defendants Turner Construction

Company ("Turner") and Delta Airlines, Inc. ("Delta"), alleging violations of New York Labor

Law §§ 240(1), 240(6), and 200.  (Compl. (Doc. No. 1).)  Defendants now move for summary

judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Defs.' Mot. Summ. J. (Doc.

No. 39).)  Gigantino opposes the motion and cross-moves for partial summary judgment.  (Pl.'s

Mem. Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 48).)[1]  For the reasons set forth below, both

motions are DENIED.

**BACKGROUND**[2]

       Joseph Gigantino worked as a tile finisher for Atlantic Exterior Walls ("Atlantic"), one of

several subcontractors hired to work on the Delta Sky Club Project in JFK International Airport.

(Compl. at ¶¶ 3–4; Defs.' Resp. 56.1 (Doc No. 44) at 6–7.)  Turner Construction Company

served as the general contractor for the Delta Sky Club project.  (Defs.' Resp. 56.1 at 2.)  Turner

---

[1] The Court notes that Gigantino failed to file a notice of motion as required by Local Rule 7.1.  As Gigantino filed a memorandum of law and supporting documents that allowed the Court to consider his proposed motion, the Court overlooks this procedural violation in the interest of expediency.

[2] The following facts – drawn from the parties' Local Rule 56.1 statements and the submissions filed in connection with this motion – are undisputed unless otherwise noted.

hired Atlantic to do tiling work in the bathrooms of the Delta Sky Club.  (*Id.* at 7.)

On January 23, 2013, Gigantino was working in a bathroom of the Delta Sky Club to complete a "punch list" of touch-ups and modifications to the tile work that had already been completed.[3]  (Defs.' 56.1 (Doc. No. 40) at ¶¶ 1, 25.)  Gigantino was inspecting the top of the tiling, which was a distance above the ground that Gigantino could not reach when standing on the floor.[4]  (Defs.' Resp. 56.1 at 44–45.)  In order to reach the top of the tiling, Gigantino was standing on a raised platform known as a Kwik Bench II.  (Pl.'s 56.1 (Doc. No. 36) at ¶ 1.) There were multiple types of raised platforms and scaffolding used at the Sky Club worksite. (Defs.' 56.1 at ¶ 61; Defs.' Resp. 56.1 at 16.)  The Kwik Bench was small enough to fit inside of the bathroom stall after the toilets had been installed, but the other types of raised platforms used on the worksite were larger and could not be used because they took up too much space.[5]  (Defs.' Resp. 56.1 at 16–17.)  While Gigantino was working on the wall of the bathroom, he fell off of the Kwik Bench, hit a toilet as he fell, and suffered permanent back, neck, shoulder, and rib injuries.  (Pl.'s 56.1 at ¶¶ 1–2, 66.)  Gigantino alleges that "[t]he scaffolding plank was too narrow to work from safely and no safety harness with lanyards nor guardrails were provided,

[3] Parties dispute which bathroom Gigantino was working in.  Gigantino states that he assumes that he fell in the men's bathroom, due to the layout of the space as he remembers it on the date of his fall, but that the signs designating gender were not yet mounted on the doors to the bathrooms.  (Pl.'s 56.1 Resp. (Doc. No. 37) at 1 ("there were no markers designating the genders of the bathrooms at the time of construction or the time of the accident"), 3.)  Photographs from the date in question, taken to document the incident, appear to have been taken in the women's bathroom and defendants suggest that the accident took place in the women's bathroom.  (Defs.' 56.1 at ¶¶ 70, 73, 83.)

[4] Parties dispute whether Gigantino was inspecting the tile or reaching for a sticker, whether he was reaching with his arms extended, how his body was positioned, and whether he moved his feet in any way.  (Pl.'s 56.1 at ¶¶ 63–64 (While "reaching with both his left and right arms toward the corner of the wall in order to inspect the tile . . . Gigantino 'went to take the sticker that was up there down and either cut the tile out or see what [he] had to do to fix it, that's when [his] foot rolled off the end of . . . the bench.'"); Defs.' Resp. 56.1 at 23 ("while on the bench for the five minutes before the incident, Gigantino said the *only* thing he was doing was 'inspecting the top of the tile'").)

[5] Gigantino contends that he requested that Turner not allow the toilets to be installed before he completed his punch list work.  (Pl.'s 56.1 at ¶ 39.)  Defendants dispute this account.  (Defs.' Resp. 56.1 at 14–15.)  Gigantino states that he would have preferred to use another form of scaffolding but was not able to do so.  (Pl.'s 56.1 at ¶ 48.)  Turner and Delta dispute that he was forbidden to use other scaffolding.  (Defs.' Resp. 56.1 at 17.)

nor available or utilized." (Compl. at ¶ 7.)

Following Gigantino's accident, the Kwik Bench he used was inspected and found not to have been damaged or faulty. (Defs.' 56.1 at ¶¶ 153–66.) After the accident, Mr. Steven Schefler, a Turner employee and the site manager, advised workers to use Baker Scaffolds in lieu of the Kwik Benches.[6] (Pl.'s 56.1 at ¶¶ 11, 72–73.) The Baker Scaffold is a 30-inch by six-foot platform, with wheels that lock a guardrail on three of the four sides. (*Id.* at ¶ 29.)

Turner and Delta argue that they are entitled to summary judgment on each of the following claims: strict liability under New York Labor Law § 240 (the "Scaffold Law"), and negligence under §§ 240(1), 241(6) and 200 of the New York Labor Law. (Mem. Supp. Mot. Summ. J.) Defendants claim that the Kwik Bench was an appropriate device for the project and that Gigantino simply walked off the bench. (*Id.* at 4.) Gigantino cross-moves for summary judgment on the "Scaffold Law" claim and argues that material issues of fact exist for the three negligence claims. (Pl.'s Mem. Opp'n to Defs.' Mot. for Summ. J.)

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the Court must draw all "justifiable" or reasonable inferences in

---

[6] Defendants dispute that Schefler advised workers to use Baker Scaffolds in lieu of Kwik Benches after the accident. (Defs.' Resp. 56.1 at 26 ("Deny that . . . Schefler replaced Kwik Benches with Baker Scaffolds as he testified he never told anyone they 'can't use' the Kwik Bench.").)

favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

### I.   Labor Law § 240(1)

New York's Labor Law § 240(1), also known as the Scaffold Law, protects workers from elevation-related risks as it imposes absolute liability upon owners and contractors for construction-related incidents:

> All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such

> labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240 (McKinney). These protections, however, "extend only to a narrow class of special hazards, and do not encompass *any* and *all* perils that may be connected in some tangential way with the effects of gravity." *Nieves v. Five Boro Air Conditioning & Refrigeration Corp.*, 93 N.Y.2d 914, 915 (2d Dep't 1999) (internal quotation marks omitted). "Not every worker that falls on a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1)." *Narducci v. Manhasset Bay Assocs.*, 96 N.Y.2d 259, 267 (N.Y. 2001). The statute is liberally construed to accomplish its purpose of affording protection to workers. *Melber v. 6333 Main St.*, 91 N.Y.2d 759, 762 (N.Y. 1998) ("Labor Law § 240(1) is for the protection of work[ers] from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (internal quotation marks omitted)). Caution must nevertheless be exercised not to stretch the statute's reach beyond that intended by the Legislature because it incorporates the extraordinary remedy of absolute liability. *See Perchinsky v. State*, 232 A.D.2d 34, 37–38 (3d Dep't 1997) ("Because these statutes impose absolute liability without regard to a worker's culpability, their language should not be strained to encompass accidents which the Legislature did not intend to include."). Thus, to come within the protection afforded by the statute, an injured worker generally must show, at a minimum, that a relevant safety device was absent or defective and that such absence or defect was a proximate cause of a gravity-related injury. *See Narducci*, 96 N.Y.2d at 267–68.

Defendants argue that Gigantino's § 240(1) claim should be dismissed because Gigantino was provided with an adequate safety device and no statutory violation was the proximate cause

of the incident. (Defs.' Mem. Supp. Summ. J. at 4.) Turner and Delta present testimony from John Tomich, a former OSHA director and the defendants' liability expert, to support their claim that the Kwik Bench was an appropriate safety device and there was no statutory violation. (*Id.* at 8.) Tomich testified that he considered the Kwik Bench to be a safety device, and that it was suitable for use by Gigantino on the day of the incident. (Defs.' 56.1 at ¶¶ 151–58.) Tomich opined that Gigantino was able to perform his work on the Kwik Bench without overreaching or compromising his center of gravity, and that the Kwik Bench played no role in Gigantino's fall. (*Id.* at ¶¶ 162, 164.) Defendants cite *Blake v. Neighborhood Hous. Servs. of New York City, Inc.*, 1 N.Y.3d 280 (N.Y. 2003), to substantiate their claim of no liability. In *Blake*, the New York Court of Appeals stated that, "we have held that there can be no liability under section 240(1) when there is no violation and the worker's actions (here, his negligence) are the 'sole proximate cause' of the accident." *Blake*, 1 N.Y.3d at 290.

Gigantino disputes Turner and Delta's claim that the Kwik Bench was a safety device, and argues that the Kwik Bench was merely an elevated "work platform." (Pl.'s Mem. Opp'n to Defs.' Mot. for Summ. J. at 1.) Gigantino states that he never deliberately lifted his feet off of the bench, and that his fall was the result of overextending to reach the wall, due to his inability to place the Kwik Bench flush with the wall once the toilet had been installed. (Pl.'s 56.1 at ¶¶ 51–65.) Gigantino states that Turner and Delta should have provided a "safer, larger, longer and wider scaffold that had railings; provided a safety harness [and] lanyard that would arrest any fall from a scaffold; provided another contractor to act as a spotter for Mr. Gigantino in case he lost his balance; and/or should not have installed the toilet before the tile work was completed because it interfered with Mr. Gigantino's ability to safely reach, inspect, and work on all tiles without losing his balance." (Pl.'s Mem. Opp'n to Defs.' Mot. for Summ. J. at 5.) In not

providing such safety provisions, Gigantino argues, the defendants violated § 240(1) and bear absolute liability for Gigantino's fall.  (*Id.* at 1.)  Gigantino distinguishes his claim from the facts of *Blake*, where "the plaintiff was found to be the sole proximate cause of his injuries because he failed to lock the extension clips which caused the ladder to collapse as he climbed on it."  (Pl.'s Reply Mem. at 4 (citing *Blake*, 1 N.Y.3d at 290).)

If there is no question that a plaintiff's injuries are at least partially attributable to defendant's failure to provide guardrails, safety netting, or other proper protection, then the precise manner of a plaintiff's fall is immaterial and summary judgment should be granted.  *See Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 450 n.8 (S.D.N.Y. 2005) ("[L]iability under § 240(1) is 'absolute' insofar as a plaintiff who demonstrates that a violation of the statute was the proximate cause of his injury, cannot have his recovery reduced by a claim that the plaintiff was also partially responsible for the injury.").  However, where a jury could conclude that the plaintiff's actions were the sole proximate cause of the plaintiff's injuries, summary judgment for the plaintiff is not appropriate.  *See Thome v. Benchmark Main Tr. Assocs.*, 86 A.D.3d 938, 940 (4th Dep't 2011) (reversing order finding for plaintiff on summary judgment where triable issue of fact existed as to whether the "plaintiff's actions were the sole proximate cause of his injuries.").

Here, there are not enough settled facts to determine the cause of the accident and who is at fault for Gigantino's injuries.  Crucially, the parties disagree as to which bathroom stall Gigantino was working in when he fell.  (Pl.'s 56.1 Resp. at 1, 3.)  The precise location is significant because the positioning of the Kwik Bench would have differed in the two stalls; in the women's stall, Gigantino would have had adequate room on the side of the toilet to place the Kwik Bench flush with the wall, but in the men's stall, the Kwik Bench may not have been able

to fit directly flush with the wall.  (Defs.'56.1 at ¶¶ 138–40.)  It is also not settled whether

Gigantino lost his balance when straining to reach the wall from the Kwik Bench or if he simply

"walked off" the bench.  (Pl.'s 56.1 at ¶¶ 64–65, 71; Defs.' 56.1 at ¶¶ 65, 73, 157.)  Without

knowledge of the stall in which the incident occurred and whether Gigantino was able to

properly position the Kwik Bench so as to reach the tiles without losing his balance, genuine

issues of material fact remain as to whether this was an appropriate device for the task, as well as

whether its positioning within the stall could have contributed to Gigantino's fall.  When there

are triable issues as to whether a defendant simply fell or if equipment failed to provide proper

protection, summary judgment is not appropriate.  *See Davis v. Brunswick*, 52 A.D.3d 1231,

1232 (4th Dep't 2008) (where plaintiff fell from a ladder, an issue of fact existed as to whether

the ladder failed to provide proper protection, or if the plaintiff simply fell).

## II.    Labor Law § 241(6)

Labor Law §241(6) states,

> All areas in which construction, excavation or demolition work is being
> performed shall be so constructed, shored, equipped, guarded, arranged, operated
> and conducted as to provide reasonable and adequate protection and safety to the
> persons employed therein or lawfully frequenting such places.  The commissioner
> may make rules to carry into effect the provisions of this subdivision, and the
> owners and contractors and their agents for such work, except owners of one and
> two-family dwellings who contract for but do not direct or control the work, shall
> comply therewith.

N.Y. Lab. Law § 241 (McKinney).  In order to recover under Labor Law § 241(6), Gigantino is

obligated to establish a violation of an applicable Industrial Code provision that sets forth a

specific safety standard.  *Cun-En Lin v. Holy Family Monuments*, 18 A.D.3d 800, 802 (2d Dep't

2005).  Gigantino cites to 12 New York Codes, Rules and Regulations ("NYCRR") §§ 23-1.15,

23-1.16, 23-5.1, and 23-5.2 to support his § 241(6) claim.  Code § 23-1.15 is the general handrail

provision for elevated walking surfaces and § 23-1.16 sets protocols and standards for safety

belts, harnesses, and lifelines to be supplied and used. Turner and Delta correctly argue that these provisions are not relevant to the facts of this case. (Defs.' Mem. Supp. Summ. J. at 2.) Gigantino was elevated less than seven feet and was not supplied with a safety belt, harness, or lifeline. Therefore, these provisions are not applicable to this case. *See* 12 NYCRR § 23-5.1(j) (safety railing not required for "[a]ny scaffold platform with an elevation of not more than seven feet"); *Fernandez v. Stockbridge Homes, LLC*, 99 A.D.3d 550, 524 (2d Dep't 2012) ("An alleged violation of [section 23-1.16] cannot be maintained as a predicate for section 241(6) liability where there is no evidence that a plaintiff has been provided with any of the safety devices enumerated therein.").

NYCRR §§ 23-5.1 and 23-5.2, however, may be relevant. 12 NYCRR § 23-5.1(e)(5)(i) allows bench scaffolds "not less than nine inches in width" to be used where "the working platforms are not more than 24 inches above the floor or other supporting surface." The minimum width of scaffolds more than 24 inches high is eighteen inches. 12 NYCRR § 23-5.1(e)(5). Here, the parties agree that the Kwik Bench is nine inches wide, but dispute its height at the time at which Gigantino fell. (Pl.'s 56.1 at 4.) If the Kwik Bench was extended above 24 inches, then it would not comply with the requirements set forth in § 23-5.1(e)(5) as it is only nine inches wide. Further, the use of the Kwik Bench may have violated § 23-5.2, which requires all scaffolding that does not meet the requirements of § 23-5.1 not be used unless special approval is granted. At the time of the incident, the parties have indicated that the Kwik Bench was 24 inches above the ground, (Defs.' 56.1 at ¶ 52), 27 or 28 inches above the ground, (*Id.* at ¶ 55), or 31 inches above the ground (Pl.'s 56.1 at ¶ 24). Thus, the parties do not agree on the height of the Kwik bench at the time of Gigantino's accident, and indeed, even the defendants' own statements regarding the height of the bench vary. Summary judgment on Gigantino's §

241(6) claim is therefore precluded.

### III.    Labor Law § 200

Labor Law § 200 is a general requirement that employers ensure that workplaces "provide reasonable and adequate protection [for] the lives, health and safety of all persons employed therein or lawfully frequenting such places."  N.Y. Lab. Law § 200 (McKinney). Section 200 applies only to owners and contractors who actually exercise control or supervision over the work and had actual or constructive notice of the unsafe condition that caused the plaintiff's injury.  *See Russo v. Hudson View Gardens, Inc.*, 91 A.D.3d 556, 557 (1st Dep't 2012) (finding that a Section 200 claim was not viable where the plaintiff failed to show that the managing agent of the property exercised control or supervision over the work and had actual or constructive notice of the unsafe condition).  Liability cannot be based upon allegations that an owner or contractor retained the right to generally supervise the work.  *See Robinson v. Cnty. of Nassau*, 84 A.D.3d 919, 920 (2d Dep't 2011) (explaining that general supervisory authority by contract does not amount to the authority to supervise and control the means and methods of the work sufficient to impose § 200 liability).  "[A] contractor on a construction site will be liable for an injury caused by a dangerous condition on the site where it created the condition, or where, with sufficient control over the conditions on the site, the contractor failed to remedy the dangerous condition, or to prevent the injured worker's exposure to it, within a reasonable time after the contractor had actual or constructive notice of the condition."  *Delishi v. Prop. Owner [USA], LLC*, 31 Misc. 3d 661, 671 (N.Y. Sup. Ct. 2011).  Thus, to prevail on this claim, Gigantino must show that defendants had control over the work on the Delta Sky Club Project and had actual or constructive notice of the toilet installation that Gigantino alleges was an unsafe condition.

Here, the parties dispute whether Turner and/or Delta had control over the work at the Delta Sky Club Project and whether they had actual or constructive notice of the toilet installation that Gigantino alleges was an unsafe condition. The parties agree that Turner employees ensured that the project was being constructed according to the design documents and had general responsibility for ensuring the site's compliance with safety regulations, and that Delta had a safety plan for the worksite, inspected the work as it was completed, and marked areas of concern that needed to be fixed. (Defs.' Resp. 56.1 at 4–6, 13, 15.) Gigantino asserts that Turner's employees regularly directed Atlantic subcontractors on how to do their work and prevented them from using Baker scaffolds or other pipe scaffolds, allegations that defendants deny. (Defs.' Resp. 56.1 at 3–4, 17.) Thus, there are questions of fact as to whether defendants had the authority to supervise or control the work that resulted in the Gigantino's injury.

There are also questions of fact as to whether the installation of a toilet constituted an unsafe condition that led to Gigantino's injury and whether defendants had notice of this alleged unsafe condition. Gigantino alleges that he spoke with defendants about safety concerns regarding the installation of the toilets, and asked that the toilets not be installed until Atlantic had completed its work, but that the toilets were installed anyway. (Pl.'s 56.1 at ¶ 39.) Defendants deny that Gigantino had lodged any safety complaints regarding toilet installation, and state that the toilet installation was simply part of the construction schedule and was not an unsafe condition. (Defs.' Resp. 56.1 at 14–15; Def.'s Mem. in Supp. of Mot. for Summ. J. (Doc. No. 41) at 20.) Summary judgment is not appropriate when genuine issues of material fact remain. These factual disputes preclude summary judgment with regard to the Labor Law § 200.

**CONCLUSION**

For the reasons set forth herein, both parties' motions for summary judgment are denied. This matter is re-committed to the assigned Magistrate Judge for supervision of all remaining pre-trial matters, including any further discovery, settlement discussions sought by the parties, and the preparation of a joint pre-trial order.

SO ORDERED.

Dated: Brooklyn, New York
      September 19, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge